# IN THE SUPREME COURT OF CALIFORNIA

In re JOHN HARRIS, JR.,
on Habeas Corpus.

S272632

First Appellate District, Division Three
A162891

San Mateo County Superior Court
21-NF-002568-A

---

June 27, 2024

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Evans concurred.

---

In re HARRIS

S272632


Opinion of the Court by Guerrero, C. J.


The California Constitution guarantees a person charged with a noncapital offense the right to pretrial release on bail, subject to narrow exceptions. (Cal. Const., art. I, § 12.) One exception appears in article I, section 12, subdivision (b) of the California Constitution (article I, section 12(b)), which authorizes a trial court to detain an individual without bail for "[f]elony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others." We granted review to decide whether an order denying bail pursuant to article I, section 12(b) requires evidence that would be admissible at a criminal trial, and if not, whether the prosecution may meet its burden under this provision through a proffer describing the evidence supporting pretrial detention.

Here, petitioner John Harris, Jr., filed a petition for writ of habeas corpus challenging the trial court's pretrial order detaining him without bail pursuant to article I, section 12(b). The Court of Appeal rejected petitioner's arguments that under the state Constitution and federal and state due process principles, only evidence that would be admissible at a criminal trial could support pretrial detention without bail. However, because the trial court failed to also make findings on the record

1

that there were no less restrictive alternatives to detention that could reasonably protect the government's interests in pretrial detention (see *In re Humphrey* (2021) 11 Cal.5th 135, 156 (*Humphrey*)), the Court of Appeal conditionally vacated the order denying bail and remanded the matter to the trial court for further findings.

We conclude that when a trial court makes a pretrial detention determination under article I, section 12(b), the court must be guided by a duty to ensure that the evidence it considers is reliable given an arrestee's fundamental right to pretrial liberty. In protecting these interests and in determining whether "the facts are evident or the presumption great" that the defendant committed the underlying offense, and whether there is "clear and convincing evidence" of "a substantial likelihood the person's release would result in great bodily harm to others," the court is not limited to considering only evidence that would be admissible at a criminal trial. The text of article I, section 12(b) does not contain such a limitation, which would deviate from standard practices at bail hearings, and significant policy considerations counsel against the categorical rule that petitioner proposes. When deciding whether to detain a defendant without bail under article I, section 12(b), the trial court may properly consider hearsay and documents tendered without the full evidentiary foundation that would be required at trial. In evaluating such evidence, the trial court should reject or discount material it regards as unreliable and retains discretion to demand the production of additional, admissible evidence, including live testimony, in appropriate circumstances. We further hold that the trial court's consideration of reliable proffers and hearsay evidence at a

pretrial detention hearing does not offend federal or state due process principles.

In this case, the trial court identified evidence supporting its no-bail determination, but the record does not establish that the court conducted a proper evaluation of the sufficiency of the evidence of petitioner's guilt, rather than simply presuming the truth of the charges. We conclude the best course is to remand the case so the trial court can apply the standards discussed in this opinion in addition to considering less restrictive alternatives to detention in accordance with the Court of Appeal's instruction.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was arrested on February 24, 2021, after DNA obtained from the victim of a violent rape committed more than 30 years prior was found to match petitioner's DNA. The People charged petitioner with attempted first degree murder and aggravated mayhem in connection with that incident. (Pen. Code, §§ 664, subd. (a), 187, subd. (a), 189, 205.) The People alleged that petitioner used a deadly and dangerous weapon in the commission of both offenses (*id*., § 12022, subd. (d)), and inflicted great bodily injury in the commission of attempted murder (*id*., §§ 1203.075, 12022.7, subd. (a)).

Prior to petitioner's arraignment, the San Mateo County Probation Department submitted a pretrial services report indicating that petitioner was an appropriate candidate for release on his own recognizance with enhanced monitoring. On February 26, 2021, the trial court appointed counsel for petitioner and set bail at $5 million dollars. Defense counsel requested a continuance of the arraignment to review discovery.

On March 25, petitioner entered a plea of not guilty to all charges.

On April 16, 2021, several weeks after this court decided *Humphrey*, *supra*, 11 Cal.5th 135, petitioner filed a motion requesting release on his own recognizance. The motion acknowledged that petitioner had two prior misdemeanor convictions (a 1991 conviction for theft and a 1998 conviction for driving without a license), but emphasized that petitioner successfully completed probation in both cases and had no known bench warrant history. The motion also alleged that petitioner did not present a flight risk, he had significant community ties, and there was no identifiable threat that petitioner would pose a risk of harm to the alleged victim or the public if released. Petitioner attached supporting statements from family and friends. He also attached a declaration from defense counsel, attesting to petitioner's indigency.

The People opposed petitioner's motion. They requested that bail remain set at $5 million dollars, or, alternatively, that the trial court deny bail altogether under article I, section 12(b). The People alleged that petitioner would be a significant danger if released to the community and there were no viable conditions of release that would ensure public safety.

The People's opposition also described the severity of the charged offenses, petitioner's criminal history, and petitioner's subsequent conduct with his former wives and girlfriends that bore similarities to the underlying incident. Regarding the charged offenses, the People detailed the responding police officer's observations of the alleged victim's injuries, a summary of the victim's interview with police officers, and a statement

from the victim's treating physician, with the responding officer and treating physician both being identified by name.

As described in the opposition, on March 4, 1989, the victim woke up in her bed with scarves tied around her ankles. She saw a man kneeling at the foot of her bed with one scarf on his forehead and another covering his mouth. The perpetrator tied bandanas tightly around the victim's eyes and neck, held a serrated knife to her throat, and ordered her to spread her legs. The perpetrator then raped the victim, tried to strangle her with a scarf, and sawed at the back of her neck with the knife. As the perpetrator struggled with the victim, he slashed her neck with the knife and threatened to cut her eye out. The victim pleaded for her life and begged the perpetrator to leave, but he expressed concern that she would call the police. The victim then told him to unplug her phone, which she said would slow her down, and the perpetrator eventually left. According to the opposition brief, one of the responding officers found the victim slumped on the floor in her apartment with a scarf on her neck saturated in blood. The officer described the victim's injury as one of the worst neck wounds he had ever seen. The People represented that the victim's treating physician similarly described the victim's neck injury as "pretty horrific." He reported that if the laceration to the victim's throat had been "a hair more," the cut would have severed the external jugular and likely resulted in her death. The opposition also explained that DNA analysis comparing semen located on a floral scarf found at the scene and the victim's vaginal swab matched petitioner's DNA. Photographs of the victim's injuries and of the serrated knife and bloody scarves found at the scene were attached as exhibits to the opposition.

The People's opposition also described the circumstances surrounding petitioner's 1991 conviction for petty theft, albeit without connecting these facts to any witnesses or other sources. As specified in the opposition, on December 14, 1990, petitioner walked up behind a female victim, who was wearing a scarf tied around her neck. Petitioner reached over the victim's shoulder, pulled her scarf over her head, and ran away. He told police officers that he was having emotional and personal problems and that he had grabbed the scarf to satisfy his anger and frustration.

Additionally, the People's opposition summarized recent interviews with several of petitioner's ex-wives and former girlfriends. Each interview was conducted by an inspector in the district attorney's office, also identified by name within the opposition. The opposition did not attach the interview transcripts, which included multiple levels of hearsay and unsworn statements. One of petitioner's ex-wives, who was married to petitioner from 1997 to 2005, reported that petitioner kept a collection of scarves in the garage even though she had asked him to throw the scarves away and that petitioner told her he used the scarves to tie arms and legs onto posts. An ex-girlfriend who had dated petitioner from 2005 to 2015 stated that petitioner liked to tie her up with scarves and blindfolds during sex, that he liked to role-play, and that he frequently pretended to be a rapist who broke into her home and threatened to kill her if she said anything. Another ex-girlfriend reported that in 2019, petitioner disclosed he had a sexual fetish associated with scarves. Petitioner had asked her to buy scarves with a floral pattern and border around the edges, but when she purchased a scarf, petitioner said it was the wrong type and asked her to buy the correct one. Petitioner liked to tie her to

the bed and gag her with scarves and requested photographs of herself bound to the bed with scarves.

According to the People's opposition, petitioner's fourth ex-wife, who married petitioner in 2020, told law enforcement that petitioner was "into scarves" and had placed a scarf over her mouth and eyes on a few occasions and told her not to touch him. Once when petitioner was drunk, he told his ex-wife, "This girl crawled into my bed naked and you're not going to lay in my bed and not give me any. So she tried to say I raped her." The following day, petitioner denied making this statement. The People's opposition represented that another woman who had met petitioner in late 2020 told the investigator that petitioner told her that he had enjoyed being tied up during a previous sexual encounter and wanted to experience that again. She found petitioner strange and was not interested in a sexual relationship with him. Petitioner mailed her four silk scarves, including a floral scarf with a border.

The trial court held a hearing on petitioner's bail motion on April 20, 2021. Defense counsel emphasized that the charged offenses occurred 30 years prior and that petitioner had only a limited criminal record. Defense counsel also asserted there was no evidence that petitioner still posed a risk to the victim or to the public. The prosecutor focused on the violent and serious nature of the charged offenses, and the former wives' and girlfriends' statements describing aggressive behavior involving scarves and rape fantasies. One of the inspectors who had interviewed these women was present in court but did not testify. The victim of the 1989 attack also addressed the court. She stated, "[Thirty] years ago I suffered and survived this person trying to kill me," referring to petitioner, then described

her fear of petitioner being released on bail.[1]  Defense counsel responded that there was no evidence petitioner had attempted to contact the victim, the victim had actually identified two other people as the perpetrators near the time of the incident, defense counsel had not received any DNA evidence, another person had left a note on the victim's car that stated "gotcha," and according to the police report, petitioner was not the only suspect with similar DNA.

Following argument on the bail motion, the trial court asked defense counsel whether she agreed that *Humphrey* does not require live testimony at a bail hearing and that the evidence may be presented through an offer of proof by "providing the facts of the case as each side knows them based upon the evidence that has been collected."  Defense counsel replied, "I do not, your honor.  I actually think that *Humphrey* elevated the [bar] with regards to clear and convincing [evidence].  So a proffer, I don't believe, is sufficient.  I know the court has been — we have been making these proffers, but since I don't have the burden, I don't have to present any evidence to the court, the People do."  Defense counsel added that she had only been provided discovery relating to two of the witnesses who had given statements to investigators, had not previously seen the photographs attached to the People's motion, and did not receive evidence linking petitioner's DNA to the crime scene.

The prosecutor responded that she was unaware of any authority holding that a bail hearing must be conducted as "a whole blown mini trial."  She maintained that proffers were sufficient and that was "typically how it is done" at bail

---

[1]     The victim was not placed under oath or subject to cross-examination.

hearings.  The prosecutor also argued that this court's decision in *Humphrey* established that, at a bail hearing, the court "must accept that the charges are true and that the defendant is the person responsible for those charges."

At the conclusion of the hearing, the trial court denied bail pursuant to article I, section 12(b).  The court ruled that "the prosecutor may show evidence of dangerousness or danger to return to court or concern for public safety via proffer and through evidence such as what has been presented to the court in the People's opposition to the bail motion presented today." Turning to this showing, the court cited (1) the People's "very detailed account of what the People believe [the] evidence is" linking petitioner to the charged offenses, (2) the "statements from various women involved with [petitioner] significantly after the time of this alleged offense . . . that does in some way mirror the details involving the scarves, involving the angry aggressive behavior of [petitioner] and also causing the court to continue to be concerned that despite [petitioner's] de minimis record . . . there is still a substantial likelihood that his [release] could cause great harm to other individuals," and (3) petitioner's 1991 misdemeanor theft conviction, which the court found involved conduct "that is very similar to what the People described as happening to the alleged complaining witness with the charge[d] offense[s]."  The court also found "the fact that [petitioner] has been evading arrest according to the People for at least the last 32 years is a significant factor to consider in risk of flight."

Petitioner filed a petition for writ of habeas corpus with the Court of Appeal.  He asserted that (1) the trial court erred in relying on the People's proffer rather than requiring live testimony before ordering petitioner detained without bail

9

before trial under article I, section 12(b); and (2) the court abused its discretion when it entered a no-bail pretrial detention order without making findings required under *Humphrey*, *supra*, 11 Cal.5th 135, that no nonfinancial, less restrictive alternatives to detention would protect the state's interest in public safety. The Court of Appeal rejected the first argument but agreed with the second contention.

Regarding the presentation of evidence, the Court of Appeal held that a trial court may base its pretrial detention order under article I, section 12(b) on a proffer by the prosecution. (*In re Harris* (2021) 71 Cal.App.5th 1085, 1097 (*Harris*).) It rejected petitioner's argument that the language of article I, section 12(b), read in connection with various provisions of the Evidence Code, means that "only evidence that would be admissible at a formal trial can support pretrial detention." (*Harris*, at p. 1096; see also *id.* at pp. 1097, 1100–1101.)

The court also found unpersuasive petitioner's argument that due process limits pretrial detention without bail to circumstances in which the People establish a defendant's unsuitability through admissible evidence. On this point, the court emphasized that an analogous federal bail reform statute, which contains a clear and convincing evidence standard and allows the presentation of evidence by proffer in support of pretrial detention, has withstood similar scrutiny. (*Harris*, *supra*, 71 Cal.App.5th at pp. 1097–1098.) The Court of Appeal stressed, however, that "it remains within the discretion of the trial court to decide whether particular instances of proffered evidence may be insufficient, and whether to insist on the production of live testimony or other evidence in compliance with more stringent procedural requirements." (*Id.* at p. 1101.)

Turning to the trial court's decision to deny bail under article I, section 12(b), the Court of Appeal determined that the record contained substantial evidence of a qualifying offense under article I, section 12(b), and that any reasonable fact finder could have found, by clear and convincing evidence, a substantial likelihood that the petitioner's release would result in great bodily harm to others. (*Harris*, *supra*, 71 Cal.App.5th at pp. 1101–1103; see *In re White* (2020) 9 Cal.5th 455, 471 (*White*).) Nevertheless, it determined that a limited remand was required because the trial court failed to make the express findings required under *Humphrey*, *supra*, 11 Cal.5th 135, that no less restrictive condition than detention could reasonably protect the interests in public or victim safety. (*Harris*, at pp. 1104–1106; see *Humphrey*, at pp. 139–140, 151–152.) The Court of Appeal explained that "while overlapping reasons may exist for making the applicable findings under [article I,] section 12(b) and *Humphrey*, the [trial] court's failure to articulate its evaluative process requires that [the Court of Appeal] speculate as to why the court believed that no nonfinancial conditions could reasonably protect the interests in public or victim safety," thus necessitating remand. (*Harris*, at p. 1105.)

We granted review to address petitioner's contention that only evidence that would be admissible at a criminal trial can support a pretrial detention order under article I, section 12(b).

## II. DISCUSSION

Petitioner renews his argument that only admissible evidence can satisfy article I, section 12(b)'s standards of proof. He contends that unsworn, untested statements can never meet either of the standards necessary to support a pretrial detention order made pursuant to this constitutional provision. We reject

petitioner's invitation to adopt this categorical approach. We conclude instead that a trial court may rely on an evidentiary proffer provided that the court's decision is based on reliable evidence so that an arrestee's fundamental right to pretrial liberty is protected.

### A. Article I, Section 12(b) and Relevant Statutory Law Allow for Evidentiary Proffers

#### 1. *Constitutional Text*

Article I, section 12, of the California Constitution provides in full as follows: "A person shall be released on bail by sufficient sureties, except for: [¶] (a) Capital crimes when the facts are evident or the presumption great; [¶] (b) Felony offenses involving acts of violence on another person, or felony sexual assault offenses on another person, when the facts are evident or the presumption great and the court finds based upon clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others; or [¶] (c) Felony offenses when the facts are evident or the presumption great and the court finds based on clear and convincing evidence that the person has threatened another with great bodily harm and that there is a substantial likelihood that the person would carry out the threat if released. [¶] Excessive bail may not be required. In fixing the amount of bail, the court shall take into consideration the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. [¶] A person may be released on his or her own recognizance in the court's discretion."

This section has evolved over time. As ratified by voters in 1849, the California Constitution provided that "[a]ll persons

shall be bailable, by sufficient sureties, unless for capital offences, when the proof is evident or the presumption great." (Cal. Const. of 1849, art. I, § 7; see Browne, Rep. of Debates in Convention of Cal. on Formation of State Const. (1850) p. 293.) This provision was later shifted to article I, section 6 within the California Constitution of 1879, yet its language remained unchanged until 1974. At that time, as part of a more extensive constitutional revision, article I, section 6 was moved to section 12 within the same article and certain changes were made to the provision's text, including the replacement of "proof is evident" with "facts are evident." Finally, in 1982, Proposition 4 broadened the circumstances in which courts may deny bail by adding subdivisions (b) and (c) to article I, section 12.[2]

---

[2] Voters also approved the Victims' Bill of Rights at the same election. This measure also addressed bail, providing in part, "A person may be released on bail by sufficient sureties, except for capital crimes when the facts are evident or the presumption great. Excessive bail may not be required. In setting, reducing, or denying bail, the judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at the trial or hearing of the case. Public safety shall be the primary consideration." (Cal. Const., former art. I, § 28, subd. (e).) Similar language, as subsequently amended by initiative (see Voter Information Guide, Gen. Elec. (Nov. 4, 2008) text of Prop. 9, p. 129), now appears at article I, section 28, subdivision (f)(3) of the California Constitution. We need not decide in this case how the two constitutional provisions addressing the denial of bail can or should be reconciled. (See *Humphrey, supra,* 11 Cal.5th at p. 155, fn. 7; *People v. Standish* (2006) 38 Cal.4th 858, 875, 877–878 (*Standish*).)

### 2. *Prior Case Law*

The case law construing article I, section 12 and its predecessor provisions sheds little light on the question before us. We have never been asked to decide whether an order detaining a defendant without bail prior to trial must rest upon evidence that would be admissible at a criminal trial. Our prior treatment of related issues provides only limited and mixed guidance on this subject.

In *People v. Tinder* (1862) 19 Cal. 539 (*Tinder*), disapproved in *Greenberg v. Superior Court* (1942) 19 Cal.2d 319, we held that under existing law, an indictment for a capital offense was sufficient to "furnish a presumption of the guilt of the defendant too great to entitle him to bail as a matter of right under the Constitution, or as a matter of discretion under the legislation of the State." (*Tinder*, at p. 543.)[3] An indictment is not evidence that would normally be admissible at a criminal trial. Yet we also based our conclusion in *Tinder* partly on the fact that, as the law stood at the time, a grand jury was to " 'receive none but legal evidence, and the best evidence in degree, to the exclusion of hearsay or secondary evidence,' " and when the jurors had " 'reason to believe that other evidence within their reach will explain away the charge, they should order such evidence to be produced.' " (*Tinder*, at pp. 542–543.) In any event, *Tinder* merely identified a sufficient, rather than

---

[3] After we decided *Tinder*, the Legislature enacted Penal Code section 1270, which provided that the finding of an indictment in a capital offense does not add to the strength of the proof or the presumptions to be drawn therefrom at a bail hearing for an individual charged with a capital offense. (1872 Pen. Code, § 1270, amended by Stats. 1986, ch. 248, § 165, p. 1267 and renumbered as § 1270.5.)

a necessary, basis for a pretrial detention order.  That decision therefore provides little guidance here.[4]

In the more than 150 years that have elapsed since the *Tinder* decision, some of the cases in which we have reviewed the sufficiency of the evidence behind a no-bail determination involved the presentation of some kind of live testimony (e.g., *In re Troia* (1883) 64 Cal. 152, 152–153), but the nature of the evidence presented in other cases is less apparent (e.g., *Ex parte Curtis* (1891) 92 Cal. 188, 191; *Ex Parte Wolff* (1880) 57 Cal. 94). In any event, none of these cases involved significant disputes over the admissibility of the evidence that was presented at the bail hearing.

Most recently, in *White, supra*, 9 Cal.5th 455, we upheld a no-bail order under article I, section 12(b) based on live testimony and the defendant's recorded interviews with law enforcement introduced at a preliminary hearing.  (*White*, at pp. 459, 471.)  *White* also did not involve any evidentiary dispute, but its analysis is relevant insofar as it considered the standards of proof under article I, section 12(b).  We first addressed the clause within this provision that "allows courts to

---

[4]    Our decision in *Tinder* also expressed concerns relating to the administrability of bail proceedings.  We rejected the notion that affidavits or oral testimony as to the guilt or innocence of the defendant could rebut the presumption of guilt arising from the indictment, reasoning that this would transform " 'a motion to bail into an examination into the guilt or innocence of the prisoner,' " which " 'would be attended with most serious inconvenience.' "  (*Tinder, supra*, 19 Cal. at pp. 545–546; see *id.* at p. 546 [noting that most state and federal courts imposed the same rule precluding additional evidence upon an application for bail after indictment for a capital offense, unless special and extraordinary circumstances existed].)

deny bail when the facts underlying the qualifying charge are 'evident' or the 'presumption great.'" (*White*, at p. 463.) Our decision in *White* reaffirmed that "[o]ur court, in step with the broad consensus that has since emerged in other states, has interpreted this odd terminology to require evidence that would be sufficient to sustain a hypothetical verdict of guilt on appeal." (*Ibid.*) We noted that this standard "is more stringent than mere 'sufficient cause,' which is the showing required to hold a defendant to answer for an offense." (*Id.* at p. 463, fn. 3.) At the same time, however, we did not take a position on whether the prosecution could only meet this standard through evidence that would be admissible at an eventual trial as that issue was not before us.

Turning to the second clause of article I, section 12(b), we further held in *White* that the question of whether an arrestee poses a substantial likelihood of great bodily harm to others is a question of fact that must be established by "clear and convincing evidence." (*White*, *supra*, 9 Cal.5th at p. 467.) This standard of proof, we explained, "requires a specific type of showing — one demonstrating a ' "high probability" ' that the fact or charge is true." (*Ibid.*) We also emphasized that the finding of a substantial likelihood of great bodily harm, like other future-harm determinations under various civil commitment schemes, was subject to review for substantial evidence. (*Id.* at p. 466.)

Although *White* elaborated on the standards of proof that must be met before a trial court may order an individual detained without bail under article I, section 12(b), we did not address whether the prosecution could meet this standard only through evidence that would be admissible at an eventual trial. It is well settled that the admissibility of evidence is a wholly

separate concept from the standard of proof. (See, e.g., *People v. Falsetta* (1999) 21 Cal.4th 903, 920 [" 'While the admission of evidence of the uncharged sex offense may have added to the *evidence* the jury could consider as to defendant's guilt, it did not lessen the prosecution's *burden* to prove his guilt beyond a reasonable doubt' " (italics added)].) Accordingly, our jurisprudence in this area sheds little light on the presentation of evidence required to support a no-bail determination under article I, section 12(b).

### 3. *Analysis*

This dearth of case law means that we must evaluate article I, section 12(b) without significant guidance from our prior decisions.

Beginning with the text of this provision, as observed by the Court of Appeal below (*Harris*, *supra*, 71 Cal.App.5th at p. 1097), nowhere on its face does article I, section 12(b) indicate that a court may consider only evidence that would be admissible at a criminal trial in determining whether "the facts are evident or the presumption great," or whether the People have shown by "clear and convincing evidence that there is a substantial likelihood the person's release would result in great bodily harm to others." The first clause of the provision refers to the presentation of "facts," but does not prescribe how these facts are to be shown. The second clause likewise does not limit how the People are to make the required showing of proof by clear and convincing evidence. Although the latter clause uses the word "evidence," as noted this describes the standard of proof involved; it is not a limitation regarding the *form* in which evidence must be presented.

Nor do we perceive any underlying intent, not captured on the face of article I, section 12(b), to limit this provision through the categorical rule that petitioner proposes. No clear indications of such an intent appear in the debates regarding the 1849 Constitution, the legislative materials accompanying the 1974 constitutional revisions, or in the ballot materials associated with Proposition 4 in 1982.[5] Indeed, despite the 1974 constitutional revision's change in wording from "proof is evident" to "facts are evident" (Cal. Const. Revision Com., Proposed Revision (1971) p. 19), a revision that on its face seems potentially significant, the "comments accompanying the constitutional revision indicate that the measure generally intended no substantive changes by such minor changes in language." (*In re Podesto* (1976) 15 Cal.3d 921, 929, fn. 6.)

The absence of any such indicia regarding Proposition 4 is of particular note. Had this measure included a deviation from conventional practices at bail hearings, which commonly involve informal proffers by the prosecution and defense alike, one might expect to see some mention of that in the ballot materials.[6] But none appears. Indeed, a legislative report on

[5] The Constitution Revision Commission's background study from 1969 merely observed that, under the then-existing constitutional provision exempting capital defendants from bail when the " 'proof is evident or the presumption great,' " trial courts "have a great deal of discretion in determining whether bail must be denied pursuant to this exception." (Cal. Const. Revision Com., Article I Declaration of Rights Background Study 4 (Dec. 1969).)

[6] In the period leading up to Proposition 4, the Legislature passed laws allowing courts making bail determinations to consider a variety of sources, including arrest reports and other

an earlier version of the draft amendment queried whether there should be "testimonial evidence as opposed to hearsay statements or oral allegations," suggesting the Legislature did not view the existing "facts are evident" standard as assuring the production of admissible evidence. (Assem. Com. on Criminal Justice, Analysis of Assem. Const. Amend. No. 14 (1981–1982 Reg. Sess.), as amended May 6, 1981, p. 3.)

It also seems doubtful that article I, section 12(b) was intended to constitutionalize an extension of the rules regarding the admission of evidence at a criminal trial when the timeline for setting or denying bail may make it difficult or impossible for the parties to present evidence in the manner required at trial. Initial bail hearings occur at the earliest stages of a criminal proceeding, often at the time of a defendant's arraignment (Pen. Code, §§ 825, 1269b, subd. (b)) when the parties' ability to secure witnesses through subpoena is limited. (*Id.*, § 1328 [police officer may refuse to accept service of subpoena if tendered less than five working days prior to date of hearing]; Code Civ. Proc., § 1987, subd. (a) [witnesses must be allowed a "reasonable time" for preparation and travel]; cf. *United States v. Montalvo-Murillo* (1990) 495 U.S. 711, 720 ["Detention proceedings take place during the disordered period following arrest"]; *U.S. v. LaFontaine* (2d Cir. 2000) 210 F.3d 125, 131 ["informality of bail hearings serves the demands of speed"].)

records, sworn statements and affidavits. (Stats. 1968, ch. 1362, § 1, p. 2599; Pen. Code, former § 1204.5; Stats. 1973, ch. 810, § 3, p. 1445; Pen. Code, former § 1269c; *O'Neal v. Superior Court* (1986) 185 Cal.App.3d 1086, 1092 [describing legislative history of former Pen. Code, § 1204.5's provision allowing consideration of accused's prior criminal record at bail hearing].)

Moreover, as the Attorney General observes, "a victim of a recent violent crime may be physically unable to appear so soon after the crime occurs," whether because of their injuries or because "[v]ictims or witnesses suffering trauma from a serious crime may be emotionally or mentally unable to appear and face the defendant immediately after the defendant's arrest or the filing of charges." And "[o]ther witnesses may be unable to make an immediate appearance because of previously scheduled work or childcare needs or an inability to travel." Petitioner's approach also implicates the possibility of mini trials ahead of a bail hearing at which the admissibility of certain evidence, such as a defendant's confession, would be disputed. Neither the constitution nor the statutory scheme contemplates these kinds of additional procedures. These practical issues suggest that petitioner's categorical rule would disserve the intent behind article I, section 12(b).

Petitioner's proposed rule also finds little support in contemporary standards regarding bail hearings and the descriptions of these hearings found in leading treatises, which emphasize the informal nature of these proceedings. (See, e.g., Cal. Criminal Law: Procedure and Practice (Cont.Ed.Bar 2d ed. 2021) § 5.29 ["[T]he bail hearing is informal and devised to discover salient information relating to permissible guidelines for setting bail. Either side may produce evidence through testimony, declarations, or representations"]; 4 LaFave et al., Criminal Procedure (4th ed. 2022) § 12.1(d), p. 19 ["The receipt of information at a bail hearing is much more informal than the taking of evidence at a criminal trial"]; LaFave, Search and Seizure: A Treatise on the Fourth Amendment (6th ed. 2022) § 1.6(e) ["Generally, it may be said that information offered at a pretrial hearing concerning the terms and conditions of

defendant's release need not conform to the rules of evidence"]; ABA Stds. for Crim. Justice (3d. ed. 2007) stds. 10-5.10(a)(iv), p. 133 [at any pretrial detention hearing defendant should have the right to present information by proffer or otherwise]; 10-5.10(d), p. 133 ["At any pretrial detention hearing, the rules governing admissibility of evidence in criminal trials should not apply. The court should receive all relevant evidence"]; *id.*, com. to std. 10-5.10(a), p. 136 ["Proceeding by proffer is consistent with current practice which allows for less formal evidentiary rules at this early stage of proceedings"].) Indeed, "it has been noted that 'Bail hearings are "typically informal affairs, not substitutes for trial or even for discovery. Often the opposing parties simply describe to the judicial officer the nature of their evidence; they do not actually produce it." ' " (ABA Stds. for Crim. Justice, *supra*, com. to std. 10–5.10(a), p. 136.)

Finally, there is no reason to believe that the standards of proof specified in article I, section 12(b) can, as a practical matter, be met only through admissible evidence. Admissible evidence is not required to ascertain whether *facts* exist that "would be sufficient to sustain a hypothetical verdict of guilt" of one or more qualifying crimes. (*White*, *supra*, 9 Cal.5th at p. 463.) And it is well established that in federal bail proceedings, an unsworn proffer may establish a high probability of the truth of a fact justifying pretrial detention. (See, e.g., *U.S. v. Smith* (D.C. Cir. 1996) 79 F.3d 1208, 1210 (*Smith*) ["Every circuit to have considered the matter . . . has . . . permitted the Government to proceed by way of proffer"]; *U.S. v. Gaviria* (11th Cir. 1987) 828 F.2d 667, 669; *U.S. v. Winsor* (9th Cir. 1986) 785 F.2d 755, 756; *U.S. v. Delker* (3d Cir. 1985) 757 F.2d 1390, 1397–1398; *U.S. v. Acevedo-Ramos* (1st Cir. 1985) 755 F.2d 203, 206 (*Acevedo-Ramos*).) In sum, we reject

petitioner's argument that the evidence offered by the prosecution in support of a request to deny bail under article I, section 12(b) must always be presented in a manner that would render it admissible at a criminal trial. As discussed below, however, trial courts must ensure that the evidence they consider is sufficiently reliable in order to protect an arrestee's liberty interests.

### 4. *Counterarguments*

Petitioner relies on case law from courts in other states to support his argument that only evidence that would be admissible at trial may be utilized to satisfy article I, section 12(b)'s standards. Meanwhile, amici curiae Civil Rights Corps, the ACLU of Northern California, the California Public Defenders Association, Ventura County Public Defender Claudia Y. Bautista, and Human Rights Watch (collectively, amici curiae) cite such decisions in support of their alternative proposed holding that (1) article I, section 12(b) precludes the use of inadmissible hearsay, over a defendant's objection, to establish a disputed fact material to a pretrial detention determination, unless the trial court finds "good cause" to permit the hearsay; and (2) even when good cause exists to allow the introduction of hearsay evidence, a court may not make any factual finding supporting pretrial detention based solely on such hearsay. Amici curiae characterize their position as supported by "a wide judicial consensus in other jurisdictions." We are unconvinced.

On this subject, approximately 40 state constitutions contain provisions limiting the right to bail in capital cases " 'when the proof is evident or the presumption great,' " or substantially similar language. (See *Fry v. State* (Ind. 2013)

990 N.E.2d 429, 438–439, fn. 10 (*Fry*).) Yet these states have adopted somewhat different standards to determine the reach of such provisions. (*The Administration of Bail* (1931) 41 Yale L.J. 293, 294 ["in interpreting and applying the clause excepting from the guaranty capital cases where the proof is evident or the presumption great, courts have arrived at strikingly different results"]; 4 LaFave et al., Criminal Procedure, *supra*, § 12.4(a) [there is considerable variation among the states regarding the extent of the burden of proof]; see also *Fountaine v. Mullen* (R.I. 1976) 366 A.2d 1138, 1140 (*Fountaine*) [courts in approximately 40 states with similar constitutional provisions "that have addressed the question of quantum of proof have split five different ways"].)

These differences notwithstanding, there is a broader if not absolute consensus among these jurisdictions that extending the full array of evidentiary rules attendant to a criminal trial to bail hearings would be unworkable and unwise. Many states have implemented this view through statutes or court rules that make it clear that bail hearings are not covered by the same principles that govern the admissibility of evidence in criminal proceedings.[7] Where such statutes and rules exist, they have

---

[7] See, e.g., Ala. Code § 15-13-3, subd. (b)(6); Alaska Stat. § 12.30.006, subd. (g); Ark. Rules Evid., rule 1101(b); Colo. Rules Evid., rule 1101(d); Del. Rules Evid., rule 1101; Fla. Rules Crim. Proc, rule 3.132(b); Idaho Rules Evid., rule 101; Ill. Rules Evid., rule 1101(b); Ind. Rules Evid., rule 101(d); Iowa Rules Evid., rule 5.1101(c); Kan. Stat. § 22-2802(12); La. Code Evid., art. 1101(C)(2); Me. Rules Evid., rule 101(b)(8); Mich. Court Rules, rule 6.106(G)(2)(b); Minn. Rules Evid., rule 1101(b)(3); Miss. Rules Evid., rule 1101(b)(4); Mont. Rules Evid., rule 101(c)(3); Neb. Rev. Stat. § 27-1101(4)(b); Nev. Stat. § 47.020; N.D. Rules

been relied upon as grounds for allowing the prosecution to proceed by proffer in arguing that a defendant should be held pending trial without bail. (See, e.g., *People v. Simmons* (Ill. App.Ct. 2019) 143 N.E.3d 833, 838–839; *State ex rel. Torrez v. Whitaker* (N.M. 2018) 410 P.3d 201, 216–217 (*Whitaker*).)

In states where the issue has not been resolved by a statute or rule, courts have taken different approaches to the admissibility of evidence at a pretrial detention hearing under a provision requiring that the proof be evident or presumption great to justify a no-bail order. Some courts require that the prosecution show bail ineligibility through evidence that would be admissible at trial. (E.g., *Fry*, *supra*, 990 N.E.2d at p. 449; *Young ex rel. Boone v. Russell* (Ky. 1960) 332 S.W.2d 629, 633; see *State v. Passino* (Vt. 1990) 577 A.2d 281, 284 [constitutional provision allowing court to deny bail in capital case "where the evidence of guilt is great" cannot be met by inadmissible evidence].) One decision in this camp, recognizing the practical difficulties of conducting such a hearing on short notice, has allowed that "the court can hold a defendant charged with an offense punishable by life imprisonment without bail for such time as is necessary to enable the parties to prepare for a full bail hearing and to make appropriate motions," while also emphasizing that the hearing "must be scheduled as soon as reasonably possible." (*Passino*, at p. 285.) Another approach requires admissible evidence, but allows the prosecution to rely

Evid., rule 1101(d)(3)(F); N.M. Rules Crim. Proc., rule 5-401P; Okla. Stat. tit. 12, § 2103(B); R.I. Rules Evid., rule 101(b)(3); S.C. Code, § 17-15-60; S.D. Codified Laws § 23A-43-12; Tex. Rules Evid., rule 101(e)(3); Utah Rules Evid., rule 1101(c)(4); Wn. Rules Evid., rule 1101(c)(3); Wis. Stat. § 911.01(4)(c); Wyo. Rules Evid., rule 1101 (b)(3).

to some degree, when necessary, upon evidence that otherwise might be inadmissible. (*Commonwealth v. Talley* (Pa. 2021) 265 A.3d 485, 524, fn. 35.) This is the line of authority that amici curiae regard as most persuasive. A third view allows the prosecution to rely upon hearsay, provided that this hearsay is either sufficiently reliable or otherwise provides a basis for the court to make an independent assessment of whether there is sufficient proof of the defendant's guilt. (*Rico-Villalobos v. Guisto* (Or. 2005) 118 P.3d 246, 255 (*Rico-Villalobos*); *State v. Arthur* (Fla. 1980) 390 So.2d 717, 720; *Bates v. Ogata* (Hawaii 1971) 482 P.2d 153, 155.)

Given the variety of interpretations advanced in these cases, influenced in some instances by matters such as the standard of proof applicable to a no-bail order (e.g., *Fountaine*, *supra*, 366 A.2d at p. 1140), we conclude these decisions are of limited consequence to the issue before us. We do note, however, that most jurisdictions that have considered the question allow a no-bail order to be premised at least to some extent on hearsay evidence that would not necessarily be admissible at a criminal trial. Also, the most persuasive of the decisions addressing the use at a pretrial detention hearing of evidence that would be inadmissible at a criminal trial properly focus upon the ultimate question of the burden or burdens that the prosecution must satisfy, and have declined to either forbid hearsay altogether or broadly require "good cause" for its admission.

In *Rico-Villalobos, supra*, 118 P.3d 246, for example, the Supreme Court of Oregon examined a provision in the Oregon state constitution that provides all offenses shall be bailable by sufficient sureties, except for murder or treason, " 'when the proof is evident, or the presumption strong.' " (*Id.* at p. 248, citing Or. Const., art. I, § 14.) The court determined that

"[w]hile the text of [the constitutional provision] shows that the framers of the provision wanted to establish a high threshold of proof before a person could be held without bail, even when charged with murder, the words themselves do not suggest any limit on the kind of evidence that would be admissible in a proceeding to determine whether to allow bail." (*Rico-Villalobos*, at p. 252.) The court noted that early cases in other jurisdictions with similar bail provisions, while split over whether an indictment was sufficient proof to deny bail, "suggest[] that those provisions imposed no particular limitations on the kind of proof that a court could consider in determining whether or not a defendant in a murder case was bailable." (*Id.* at p. 253.) The court concluded that "the burden [is] on the state at the pretrial release hearing to present evidence, direct or circumstantial, from which the trial court can make an independent determination that evidence that likely will be admissible at trial shows that the proof of defendant's guilt is 'evident' or the 'presumption strong'; however, that provision does not preclude the state from making that showing by means of hearsay evidence." (*Id.* at p. 255.)

Neither *Rico-Villalobos* nor any other decision from another jurisdiction is on all fours with this matter. Among these differences, article I, section 12(b)'s concern with public safety suggests it would be misguided to limit a proffer under this provision to describing facts likely to be admitted at a defendant's trial when some such facts, though relevant to future dangerousness, might not be sufficiently relevant to the charged offenses as to warrant admission at trial. Yet *Rico-Villalobos* and other decisions that allow for the introduction of hearsay without first ascertaining good cause, or requiring additional evidence that would be admissible at trial, contradict

amici curiae's assertion that a broad judicial consensus supports their position. We also agree with *Rico-Villalobos* insofar as it declined to regard all evidentiary rules that apply at trial as extending to bail hearings pursuant to a state constitutional provision that does not on its face or by implication impart such a limitation. Amici curiae's argument fails for a similar reason; it seeks to import into the state Constitution's language — that "facts are evident or the presumption great" (art. I, § 12(b)) — restrictions that are not reasonably read into its text.

Amici curiae's reliance upon decisions from other jurisdictions is even less tenable with regard to article I, section 12(b)'s "clear and convincing evidence" standard. As previously noted, federal appellate courts have uniformly rejected the argument that a court may not base its pretrial detention determination on hearsay evidence when it makes a finding by clear and convincing evidence of future dangerousness. (*Smith*, *supra*, 79 F.3d at p. 1210; *U.S. v. Gaviria*, *supra*, 828 F.2d at p. 669; *U.S. v. Winsor*, *supra*, 785 F.2d at p. 756; *U.S. v. Delker*, *supra*, 757 F.2d at pp. 1397–1398; *Acevedo-Ramos*, *supra*, 755 F.2d at p. 206; *U.S. v. Vondette* (2d. Cir. 2001) 5 Fed.Appx. 73, 76.) Our sister state courts are largely in accord. (See *State v. Pinkston* (N.J. 2018) 187 A.3d 113, 117; *Abbott A. v. Commonwealth* (Mass. 2010) 933 N.E.2d 936, 946–947; *Wheeler v. State* (Md. 2005) 864 A.2d 1058, 1065–1066; *Lynch v. U.S.* (D.C. 1989) 557 A.2d 580, 582.) In *Whitaker*, *supra*, 410 P.3d 201, the Supreme Court of New Mexico held: "We agree with courts in all other federal and state bail reform jurisdictions that have considered the same issues, and we hold that the showing of dangerousness required by the new constitutional authority is not bound by formal rules of evidence but instead focuses on judicial assessment of all reliable information presented to the

court in any format worthy of reasoned consideration. . . . [¶] In most cases, credible proffers and other summaries of evidence, law enforcement and court records, or other nontestimonial information should be sufficient support for an informed decision that the state either has or has not met its constitutional burden." (*Id.* at p. 203.)

In sum, we do not find the alternative approaches advanced by amici curiae or utilized in other jurisdictions to be workable or persuasive under California law. A rule that permits holding defendants in custody for extended periods while the parties arrange for the appearance of witnesses is not a particularly attractive alternative to a rule that permits making bail determinations based on a wider scope of evidence, but also allows for reconsideration of bail determinations based on developing facts. Moreover, the alternative approaches suffer from the same fundamental flaws, namely, neither is grounded in the constitutional text nor consistent with the prevailing practices at bail hearings.

### 5. *Proffers Must Be Reliable*

While a trial court has considerable discretion in evaluating the evidence presented in connection with a no-bail determination under article I, section 12(b), "this should not be taken to mean that information must be accepted by the court without regard to its reliability." (4 LaFave et al., Criminal Procedure, *supra*, § 12.1(d), p. 19.) As a threshold matter, even though strict compliance with the rules of evidence applicable at a criminal trial is not required, a trial court must ensure that an arrestee's liberty interests are protected and base its decision on reliable facts, not merely general assertions by the prosecution regarding what the evidence is likely to show. (See,

e.g., *State v. Pan* (Conn. 2022) 291 A.3d 82, 104 [distinguishing between "simple representations of counsel," deemed inadequate to satisfy a party's burden at a bail hearing, and a "proffer, supported by reliable hearsay evidence, relevant documents, and other documentary or testimonial evidence," which could meet this burden]; *In re Application of Haynes* (Or. 1980) 619 P.2d 632, 642 ["A prosecutor's assertions about evidence that he 'feels' he 'may be able to introduce' are not 'proof' "].)

The court's exercise of discretion to order a defendant detained under article I, section 12(b) should also "reflect an awareness of the high stakes involved." (*U.S. v. Martir* (2d Cir. 1986) 782 F.2d 1141, 1145; see also *Humphrey*, *supra*, 11 Cal.5th at p. 147 [noting that pretrial detention can result in "immense and profound" consequences, such as the loss of a job, home, or custody of a child]; *Van Atta v. Scott* (1980) 27 Cal.3d 424, 435–437 (*Van Atta*) [detailing the " 'grievous loss' " pretrial detention "inflicts" upon the detainee].) " '[A] pretrial detention hearing may restrict for a significant time the liberty of a presumably innocent person.' [Citation.] The judge . . . accordingly retains the responsibility for assessing the reliability and accuracy of the government's information, whether presented by proffer or by direct proof." (*Martir*, at p. 1145.)

A trial court thus must ensure its decision to detain an individual without bail under article I, section 12(b) is supported by *reliable* information. If the court is not satisfied with the reliability of the prosecution's proffer, it should demand additional facts or find the relevant standards unmet. (*Whitaker*, *supra*, 410 P.3d at pp. 203–204 ["a court necessarily retains the judicial discretion to find proffered or documentary

information insufficient to meet the constitutional clear and convincing evidence requirement in the context of particular cases"]; *State v. Ingram* (N.J. 2017) 165 A.3d 797, 799 ["Trial judges . . . retain discretion to require direct testimony when they are dissatisfied with the State's proffer" in support of pretrial detention]; *Acevedo-Ramos, supra,* 755 F.2d at p. 207 [the trial court "possesses adequate power to reconcile the competing demands of speed and of reliability, by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question"].)

The Attorney General has offered several nonexclusive factors relevant to determining whether a proffer is sufficiently reliable to support the findings that article I, section 12(b) requires, including: (1) the specificity and comprehensiveness with which the proffer describes the evidence; (2) the extent to which the proffer is supported by other evidence, such as photographs, videos, documents, or testimony; (3) whether the proffer attributes its information to identified witnesses with firsthand knowledge; (4) whether the government has failed to provide more precise evidence that it could readily have submitted, such as transcripts, recordings, or photographs that the proffer describes; and (5) whether the defense has, by proffer or otherwise, provided a specific basis for doubting the proffer's reliability. We agree these factors are useful in a trial court's evaluation of whether a proffer is reliable and satisfies article I, section 12(b)'s required findings. We note that a court may also consider (6) whether the government has failed to produce readily available witnesses and (7) whether information was sworn or made under oath.

In *Humphrey*, we affirmed "[a] court's procedures for entering an order resulting in pretrial detention must also

comport with other traditional notions of due process to ensure that when necessary, the arrestee is detained 'in a fair manner,' " which include "the court's obligation to set forth the reasons for its decision on the record and to include them in the court's minutes." (*Humphrey, supra,* 11 Cal.5th at p. 155.) In connection with our ruling today, we add that when the defendant has made a competing proffer, or objected to the prosecution's proffer as inadequately supported or otherwise unreliable, the trial court should endeavor to make a record of the basis on which it found the prosecution's proffer reliable. Doing so furthers the goals of fairness and reasoned decisionmaking. As augmented, these procedures will facilitate meaningful review of a trial court's ultimate decision to deny bail pursuant to article I, section 12(b). While such a decision is reviewed for abuse of discretion, the trial court's factual findings are reviewed for substantial evidence, and the reviewing court is not permitted to reweigh the evidence. (See *White, supra,* 9 Cal.5th at pp. 469–470.)

Finally, we emphasize that an initial no-bail determination is not necessarily permanent. A defendant may renew a request for release on bail in light of new facts and evidence. A defendant is entitled to a preliminary hearing within 10 court days of arraignment, at which time the defendant may cross-examine testifying witnesses. (Pen. Code, § 859b.) If evidence admitted at the preliminary hearing casts doubt on prior findings made under article I, section 12(b), the defendant may ask the court to revisit an earlier no-bail determination. (*Standish, supra,* 38 Cal.4th at p. 883, fn. 8; Pen. Code, § 1273; see *id.,* § 1289.) As this court recognized over a century ago, "There may be cases in which new facts have been developed, or new evidence discovered, after the conclusion of

the preliminary examination, in which it would be proper to hear additional testimony on the application for bail." (*Ex Parte Curtis*, *supra*, 92 Cal. at p. 190.)

### 6. *Applicability of* Humphrey*'s Instruction*

The parties also ask us to address whether *Humphrey*'s instruction that the trial court "must assume the truth of the criminal charges" (*Humphrey*, *supra*, 11 Cal.5th at p. 153) applies to the findings required under article I, section 12(b). We agree with the parties that it does not.

The instruction in *Humphrey* that trial courts must assume the truth of the criminal charges appeared within that decision's discussion of the general framework governing the setting of bail. (*Humphrey*, *supra*, 11 Cal.5th at p. 152.) We explained that where the record reflects a risk of flight or a risk to public or victim safety and the trial court has concluded money bail is reasonably necessary, "then the court must consider the individual arrestee's ability to pay, along with *the seriousness of the charged offense* and the arrestee's criminal record." (*Id*. at p. 154, italics added.) It was within the context of considering the seriousness of the charged offense in relation to victim and public safety that we held the trial court must assume the truth of those charged offenses. (*Id*. at p. 153.) At the same time, we made clear that *Humphrey* did not involve an order denying bail. (*Id*. at p. 155, fn. 7. )

As noted, article I, section 12(b) permits a trial court to deny bail under narrow circumstances and places the burden on the People to present facts to support their position. The constitutional provision specifies that a person shall be released on bail except for certain qualifying offenses "when the facts are evident or the presumption great," a standard of proof we have

construed to mean "enough evidence of reasonable, credible, and solid value to sustain a guilty verdict on one or more of the qualifying crimes." (*White*, *supra*, 9 Cal.5th at p. 463.) To hold that a court must assume the truth of the criminal charges in making such a determination would improperly relieve the People of the burden that the constitutional text, so construed, assigns to them. Accordingly, we clarify here that a court does not assume the truth of the criminal charges when evaluating whether to order a defendant held without bail under article I, section 12(b).

## B. Evidence Code Section 300 Does Not Limit the Types of Evidence a Trial Court May Consider at a Bail Hearing

Petitioner also asserts that various provisions of our Evidence Code support his position that only evidence that would be admissible at a criminal trial may be admitted at a bail hearing. He places particular emphasis upon Evidence Code section 300, which provides: "Except as otherwise provided by statute, this code applies in every action before the Supreme Court or a court of appeal or superior court, including proceedings in such actions conducted by a referee, court commissioner, or similar officer, but does not apply in grand jury proceedings." We are unpersuaded by this argument.

As noted, section 300 of the Evidence Code specifies that the code's provisions apply "[e]xcept as otherwise provided by statute." Other statutes establish to our satisfaction that bail hearings are exempted from the standard evidentiary procedures in the Evidence Code that are at issue here. Numerous statutes allow trial judges making bail determinations to consider material that would not be similarly admissible at a criminal trial.

Penal Code section 1204.5, for example, specifically excepts bail hearings from the general rule forbidding trial courts from considering arrest reports and prior criminal histories. (Pen. Code, § 1204.5, subd. (a) ["In any criminal action, . . . no judge, shall read or consider any written report of any law enforcement officer or witness to any offense, any information reflecting the arrest or conviction record of a defendant, or any affidavit or representation of any kind, verbal or written, without the defendant's consent given in open court, except . . . in any application for an order fixing or changing bail"].) Penal Code section 1269c, meanwhile, likewise permits a peace officer who has reasonable cause to believe the amount of bail set forth in the bail schedule for a felony offense is insufficient to ensure the defendant's appearance or to protect a victim or the victim's family member to "prepare a declaration under penalty of perjury setting forth the facts and circumstances in support of his or her belief and file it with a magistrate." And Penal Code section 1319 specifies that before an individual arrested for a violent felony may be released on his or her own recognizance, the trial court must hold a bail hearing and consider, among other factors, "[a]ny other information presented in [an investigative report regarding bail]" and "[a]ny other information presented by the prosecuting attorney." (*Id.*, § 1319, subd. (b)(2)–(3).) Likewise, Penal Code section 1275, subdivision (a)(1) provides that "[i]n setting, reducing, or denying bail, a judge or magistrate shall take into consideration the protection of the public, the seriousness of the offense charged, the previous criminal record of the defendant, and the probability of his or her appearing at trial or at a hearing of the case." In setting bail, Penal Code section 1275, subdivision (a) permits a judge or magistrate to "consider factors

such as the information included in a report prepared in accordance with Section 1318.1," with this information including the defendant's outstanding warrants, prior failures to appear in court, and verification of the defendant's criminal record and place of residence (*id*., § 1318.1, subd. (b)).

The statutes concerning bail hearings thus contemplate that these proceedings will involve the court's consideration of at least some hearsay that would not normally be admissible at a criminal trial. Accordingly, we reject petitioner's argument that Evidence Code section 300 functions to limit the evidence that may be introduced at a bail hearing.

## C. Due Process Principles Do Not Preclude Trial Courts from Making No-bail Decisions Based on Evidentiary Proffers

Petitioner also contends that the prosecution's use of a proffer violated his due process rights under the federal and state Constitutions. We find no constitutional error.

### 1. *Legal Principles*

The federal and state Constitutions forbid the government from depriving an individual of life, liberty, or property without due process of law. (U.S. Const., 14th Amend. ["nor shall any State deprive any person of life, liberty, or property, without due process of law"]; Cal. Const., art. I, § 7, subd. (a) ["A person may not be deprived of life, liberty, or property without due process of law"].) "In light of the virtually identical language of the federal and state guarantees, we have looked to the United States Supreme Court's precedents for guidance in interpreting the contours of our own due process clause and have treated the state clause's prescriptions as substantially overlapping those of the federal Constitution." (*Today's Fresh Start, Inc. v. Los*

*Angeles County Office of Education* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*).)

" 'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it." ' [Citations.] The opportunity to be heard must be afforded 'at a meaningful time and in a meaningful manner.' [Citations.] To ensure that the opportunity is meaningful, the United States Supreme Court and this court have identified some aspects of due process as irreducible minimums. For example, whenever 'due process requires a hearing, the adjudicator must be impartial.' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 212.)

"Beyond these broad outlines, however, the precise dictates of due process are flexible and vary according to context." (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 212; *Morrissey v. Brewer* (1972) 408 U.S. 471, 481 ["It has been said so often by this Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands"].) "Accordingly, the United States Supreme Court has rejected absolute rules in favor of balancing three considerations: 'First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.' " (*Today's Fresh Start*, at p. 213.)

"With a minor modification, we have adopted the [high court's] balancing test as the default framework for analyzing challenges to the sufficiency of proceedings under our own due process clause. The first three factors — the private interest affected, the risk of erroneous deprivation, and the government's interest — are the same. [Citations.] In addition, we may also consider a fourth factor, ' "the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official." ' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 213; Cal. Const., art. I, § 7, subd. (a).)

It is well settled that the accused retains a fundamental constitutional right to liberty before trial. (See, e.g., *Humphrey*, *supra*, 11 Cal.5th at p. 150; *Van Atta*, *supra*, 27 Cal.3d at pp. 435–436.) We have not had occasion to address what procedural protections are required when the People seek to detain a defendant prior to trial under article I, section 12(b). However, other courts, including the United States Supreme Court in *United States v. Salerno* (1987) 481 U.S. 739 (*Salerno*), have considered similar due process issues implicated by other bail statutes. We now turn to those decisions for guidance.

"Prior to 1970, in the vast majority of jurisdictions defendants had a constitutional or statutory right, at least on paper if not always in practice, to be released on bail prior to trial for virtually all crimes not punishable by death." (*Whitaker*, *supra*, 410 P.3d at p. 208, citing *Bail: An Ancient Practice Reexamined* (1961) 70 Yale L.J. 966, 967.) "In a significant change from that history, Congress gave new risk-focused pretrial detention authority to District of Columbia judges as part of the District of Columbia Court Reform and

Criminal Procedure Act of 1970." (*Whitaker*, at p. 208; D.C. Code § 23-1322, hereinafter the D.C. Bail Act.) As originally enacted, the D.C. Bail Act allowed a judicial officer to order a suspect arrested for certain enumerated offenses detained if the judicial officer found "(1) that there is clear and convincing evidence that the accused falls into one of the categories of persons eligible for detention . . . (2) that . . . there is 'no condition or combination of conditions of release which will reasonably assure the safety of any other person or the community,' [citation] and (3) that there is 'a substantial probability that the person committed . . . the offense for which he is present before the judicial officer.' " (*U.S. v. Edwards* (D.C. 1981) 430 A.2d 1321, 1334 (*Edwards*).) The D.C. Bail Act also provided that the defendant is entitled to representation by counsel and " 'to present information by proffer or otherwise, to testify, and to present witnesses in his own behalf.' " (*Edwards*, at p. 1334.)

The District of Columbia Court of Appeals addressed the constitutionality of the D.C. Bail Act in *Edwards*, *supra*, 430 A.2d 1321. In that case, the trial court had ruled that the Fifth and Eighth Amendments to the United States Constitution require that criminal defendants be afforded an opportunity to confront and cross-examine witnesses at pretrial detention hearings, and that to the extent the detention statute permitted the use of proffers or hearsay, it was unconstitutional. (*Edwards*, at p. 1324.) The appellate court disagreed. (*Id.* at pp. 1333–1334.) It held that the D.C. Bail Act provided sufficient procedural safeguards — a hearing before a judicial officer, the right to counsel, and the right " 'to present information by proffer or otherwise, to testify, and to present

witnesses in his own behalf' " — to comply with due process.[8] (*Edwards*, at p. 1334.)

The *Edwards* court was also guided by the United States Supreme Court's decision in *Gerstein v. Pugh* (1975) 420 U.S. 103 (*Gerstein*), in determining what process is constitutionally required in a pretrial detention hearing. (*Edwards*, *supra*, 430 A.2d at p. 1335.) In *Gerstein*, the high court considered "whether a person arrested and held for trial under a prosecutor's information is constitutionally entitled to a judicial determination of probable cause for pretrial restraint of liberty." (*Gerstein*, at p. 105.) The *Gerstein* court held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest" (*id.* at p. 114), but it rejected the notion that the

---

[8]  The *Edwards* court also perceived its holding as consistent with legislative intent and prevailing practices. It explained, "The legislative history of the statute confirms Congress' intent that the information upon which the judicial officer makes his finding need not be sworn testimony, and that the hearing is not designed to afford defendants a discovery device." (*Edwards*, *supra*, 430 A.2d at p. 1334.) It cited a House Report discussing the use of proffers in detention hearings, which stated: " '[A]s is the present practice under the [D.C. Bail Act], . . . the use of sworn testimony will be the exception and not the rule . . . . Bail hearings under the [D.C. Bail Act], which frequently result in detention of the accused, proceed primarily by way of proffers. They are not formal trials requiring strict adherence to technical rules of evidence. If the court is dissatisfied with the nature of the proffer, it can always, within its discretion, insist on direct testimony. But the discretion should be left to the court without imposing on it the burden of limiting admissibility to that it would permit a jury to hear.' " (*Edwards*, at p. 1334, italics omitted.) "Accordingly," the court concluded, "hearsay evidence may be presented, although the court may require direct testimony if dissatisfied with a proffer." (*Ibid.*)

determination of probable cause must be accompanied by "the full panoply of adversary safeguards" (*id.* at p. 119). The *Gerstein* court explained that the issue of whether there is probable cause for detaining the arrested person pending further proceedings, like the question of whether there is probable cause to believe the suspect has committed a crime, "can be determined reliably without an adversary hearing," and "traditionally has been decided by a magistrate in a nonadversary proceeding on hearsay and written testimony, and the Court has approved these informal modes of proof." (*Id.* at p. 120.) It also emphasized: "Criminal justice is already overburdened by the volume of cases and the complexities of our system. The proceeding of misdemeanors, in particular, and the early stages of prosecution generally are marked by delays that can seriously affect the quality of justice. A constitutional doctrine requiring adversary hearings for all persons detained pending trial could exacerbate the problem of pretrial delay." (*Id.* at p. 122, fn. 23.)

Citing *Gerstein*, the *Edwards* court reasoned that identical interests were at stake in a preliminary hearing for probable cause (as in *Gerstein*) and a pretrial detention hearing. "The effect of the findings in a detention hearing and a preliminary (*Gerstein*) hearing is the same: each hearing determines whether the accused may be detained pending trial. The individual's liberty interest affected by each proceeding is accordingly the same." (*Edwards, supra*, 430 A.2d at p. 1336.) The appellate court also concluded that the nature of the government's interest was similar in both proceedings (*id.* at p. 1337), explaining that "the government has an obvious interest in not conducting a full-blown criminal proceeding twice, once for pretrial detention and a second time for the trial

on the charges. Indeed, the individual's and the government's mutual interest in holding the hearing soon after the time of the arrest necessarily precludes the full-scale preparation and investigation that is commensurate with a criminal trial. Conversely, the limited function of a pretrial detention hearing, i.e., to determine the appropriateness of detention for a maximum of 60 days pending a trial on the charges with the full panoply of criminal trial rights, weighs in favor of a simplified hearing." (*Id.* at p. 1337, fn. omitted; see *id.* at p. 1336 ["Consideration of the individual's liberty interest and the government's interests in a simplified yet fair pretrial detention hearing leads us to the conclusion that the interests involved are closer to those in a *Gerstein* preliminary hearing than those involved in a [parole revocation] hearing, and that the statutory procedures challenged here are constitutionally adequate"].) As in *Gerstein*, the *Edwards* court concluded that "the government may proceed by the use of proffer and hearsay, subject to the discretion of the judge as to the nature of the proffer and the need for admissible evidence." (*Edwards*, at p. 1337.)

In 1984, Congress passed the federal Bail Reform Act of 1984 (18 U.S.C. § 3141 et seq., hereinafter the federal Bail Reform Act), which gave federal courts pretrial detention authority similar to that provided by the D.C. Bail Act. In *Salerno, supra*, 481 U.S. at pp. 746–747, the United States Supreme Court held that the federal Bail Reform Act did not violate the due process clause of the United States Constitution. The statute, similar to article I, section 12(b), authorizes pretrial detention of arrestees charged with certain serious felonies if the court finds clear and convincing evidence that no release conditions will reasonably assure the safety of any other person and the community. (*Salerno*, at p. 742, citing 18 U.S.C. § 3142,

subd. (f).)  It also provides arrestees with several procedural safeguards at the detention hearing, including the right to request counsel, to testify and present witnesses, to put forward evidence, and to cross-examine other witnesses appearing at the hearing.  (*Salerno*, at p. 742, citing 18 U.S.C. § 3142, subd. (f).)  In addition, the federal Bail Reform Act specifies the considerations relevant to making a pretrial detention determination, including the nature and seriousness of the charges, the weight of the government's evidence, the arrestee's background and characteristics, and the nature and seriousness of the danger posed by his release.  (*Salerno*, at pp. 742–743, citing 18 U.S.C. § 3142, subd. (g).)

In *Salerno*, the defendants were charged with various offenses related to racketeering activity, mail and wire fraud, extortion, and criminal gambling violations.  (*Salerno*, *supra*, 481 U.S. at p. 743.)  The government sought to have the defendants held in custody under the federal Bail Reform Act.  (*Salerno*, at p. 743.)  At the pretrial detention hearing, the government "made a detailed proffer of evidence" based primarily on conversations intercepted by a court-ordered wiretap.  (*Ibid*.)  The district court granted the government's detention motion, concluding it had established by clear and convincing evidence that no condition or combination of conditions of release would ensure the safety of the community or any person.  (*Id*. at pp. 743–744.)

The defendants in *Salerno* raised facial challenges to the federal Bail Reform Act on substantive and procedural due process grounds.  The high court rejected these attacks.  (*Salerno*, *supra*, 481 U.S. at pp. 745–752.)  Regarding the substantive due process claim, the court explained that pretrial detention under the statute serves a legitimate regulatory goal

of preventing danger to the community (*id*. at p. 747), the federal Bail Reform Act "carefully limits the circumstances under which detention may be sought to the most serious of crimes" (*Salerno*, at p. 747), and "the [g]overnment's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest" (*id*. at p. 748). (See *ibid*. ["Even outside the exigencies of war, we have found that sufficiently compelling governmental interests can justify detention of dangerous persons"]; *id*. at p. 749 ["an arrestee may be incarcerated until trial if he presents a risk of flight, [citation], or a danger to witnesses"].) The court concluded that the government's "legitimate and compelling" interest in preventing crime by arrestees, which is at its greatest when the evidence shows that the arrestee presents a demonstrable danger to society, outweighs the individual's "strong interest in liberty." (*Id*. at pp. 749–750.)

The *Salerno* court also rejected the defendants' procedural due process challenges to the federal Bail Reform Act. (*Salerno*, *supra*, 481 U.S. at pp. 751–752.) It explained: "Detainees have a right to counsel at the detention hearing. [Citation.] They may testify in their own behalf, present information by proffer or otherwise, and cross-examine witnesses who appear at the hearing. [Citation.] The judicial officer charged with the responsibility of determining the appropriateness of detention is guided by statutorily enumerated factors, which include the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the putative offender, and the danger to the community. [Citation.] The Government must prove its case by clear and convincing evidence. [Citation.] Finally, the judicial officer must include written findings of fact and a written statement of reasons for a

decision to detain. [Citation.] The Act's review provisions [citation], provide for immediate appellate review of the detention decision. [¶] We think these extensive safeguards suffice to repel a facial challenge."[9] (*Salerno*, at pp. 751–752.)

Although *Humphrey* did not involve an order denying bail (*Humphrey*, *supra*, 11 Cal.5th at p. 155, fn. 7), it nonetheless recognized and drew upon *Salerno*'s analysis of due process at bail hearings. We agreed that "[w]hile due process does not categorically prohibit the government from ordering pretrial detention, it remains true that '[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception.'" (*Id.* at p. 155, quoting *Salerno*, *supra*, 481 U.S. at p. 755.) We added: "Marking the boundary between the general rule and the limited exception requires a careful balancing of the government's interest in preventing crime against the individual's fundamental right to pretrial liberty. [Citation.] This territory has not yet been fully mapped, but we can nonetheless discern that an order of detention requires an interest that 'is sufficiently weighty' in the given case — and courts should likewise bear in mind that *Salerno* upheld a scheme whose scope was 'narrowly focuse[d] on a particularly acute problem.' [Citation.] Indeed, the law under review there authorized pretrial detention 'only on individuals who have been arrested for a specific category of extremely serious offenses.'" (*Humphrey*, at p. 155, citing *Salerno*, at pp. 749–750.)

---

[9] The defendants in *Salerno* challenged the use of proffers along with other procedural aspects of the federal Bail Reform Act. In finding no due process violation, the high court concluded the Bail Reform Act's procedures met, and possibly "far exceed[ed]," the requirements of due process. (*Salerno*, *supra*, 481 U.S. at p. 752.)

2. *Analysis*

The Court of Appeal below determined that *Salerno* "would seem to foreclose a federal constitutional due process challenge to the sufficiency of proffers in bail hearings, at least where, as here, procedural safeguards are provided similar to those provided in the federal context." (*Harris*, *supra*, 71 Cal.App.5th at p. 1098.) We agree petitioner's due process challenge here fails.

As we recognized in *Humphrey*, *Salerno* instructs that when a defendant is adequately shown to present an identified and articulable threat of great physical harm to an individual or the community, a court may, without violating due process principles, utilize pretrial detention to disable the defendant from executing that threat. (*Humphrey*, *supra*, 11 Cal.5th at p. 153, citing *Salerno*, *supra*, 481 U.S. at p. 751.) Such a scheme is " 'narrowly focuse[d] on a particularly acute problem.' " (*Humphrey*, at p. 155.) Yet "[a] court's procedures for entering an order resulting in pretrial detention must also comport with other traditional notions of due process to ensure that when necessary, the arrestee is detained 'in a fair manner.' " (*Ibid*., quoting *Salerno*, at p. 746.) Significantly, as explained above the high court in *Salerno* held that the federal Bail Reform Act's procedures, which have been interpreted to allow the government to proceed by proffer to demonstrate clear and convincing evidence that no release conditions will reasonably assure the safety of any other person and the community, comported with these "traditional notions of due process." (*Humphrey*, at p. 155; see *Salerno*, at p. 742; *Smith*, *supra*, 79 F.3d at pp. 1209–1210.) Thus, unless petitioner can establish that the presentation of evidence permitted under article I, section 12(b) is materially different from that permitted under

the federal Bail Reform Act, his due process challenge must be rejected. He has not done so.

Petitioner attempts to distinguish this case from *Salerno*, asserting that the procedures used in his hearing, "including the reliance on statements by the prosecution, lack of discovery, lack of notice, and lack of opportunity for petitioner to test the evidence or cross-examine the complaining witness, violated petitioner's rights to due process under both the state and federal standards." He claims that "[i]n order for this Court to determine if the use of 'proffer' violated due process, the Court must consider the detention hearing's procedures as a whole." Although petitioner acknowledges that he was "provided certain safeguards, such as the right to counsel, the right to present evidence, and the right to testify," he maintains that his due process rights were violated because he was "denied discovery, notice, the ability to cross-examine, and an expedited appellate review."

We do not find a violation of federal due process on the record before us. Here, as in *Salerno*, petitioner had counsel present at his bail hearing. He was permitted to testify on his own behalf and to also present information by proffer or otherwise. The record also indicates petitioner indeed received notice of the People's intent to request no bail under article I, section 12(b) via their opposition to petitioner's request to reduce bail, and that he also received at least some discovery. Regarding petitioner's cross-examination claim, he failed to adequately brief it in his petition for writ of habeas corpus before the Court of Appeal. (*Harris*, *supra*, 71 Cal.App.5th at p. 1098, fn. 5.) The trial court was guided by the factors set forth in article I, section 12(b), which include the nature and the circumstances of the offenses and whether there was a

substantial likelihood that petitioner's release would result in great bodily harm to others and retained discretion to reject any unreliable evidence. The trial court was also required to provide a written statement of reasons for its detention decision (*Humphrey*, *supra*, 11 Cal.5th at pp. 155–156), which was subject to immediate review (Pen. Code, § 1490; *Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 636, fn. 3).

We likewise conclude that the prosecution's use of proffers at the bail hearing did not violate " ' "the dignitary interest in informing [petitioner] of the nature, grounds, and consequences of the action and in enabling [him] to present [his] side of the story before a responsible government official." ' " (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 213.) Indeed, petitioner fails to explain how the prosecution's reliance on a proffer deprived him of his right to notice or a timely hearing. Petitioner retained the opportunity to present his own proffer and other evidence as well as the right to a timely hearing.

Petitioner contends that the Court of Appeal's decision in *Naidu v. Superior Court* (2018) 20 Cal.App.5th 300 (*Naidu*) counsels in favor of a different result. In *Naidu*, the defendants challenged a court order suspending their professional licenses as a condition of bail. (*Id.* at p. 305.) The appellate court held that the trial court violated the defendants' due process rights when it suspended their licenses in the absence of any evidence that this condition was necessary to protect the public. (*Id.* at p. 313.) The court characterized the state licensing board's written request for suspension and counsel's supporting declaration as containing mere assertions, but not "actual evidence," that the defendants' conduct made their business license subject to suspension. (*Id.* at pp. 313–314.) It viewed the board's request to be akin to the filing of a criminal

complaint, which it held would not sufficiently support the suspension of a business license as a condition of release on bail. (*Ibid*.)

*Naidu* does not provide a persuasive basis to reconsider our conclusion here. It is unclear whether that court actually demanded the presentation of evidence that would be admissible at a criminal trial. (*Naidu*, *supra*, 20 Cal.App.5th at p. 313 [characterizing statements contained in counsel's written declaration, a form of hearsay evidence, as "admissible evidence"].) Indeed, the court in *Naidu* acknowledged that "a license suspension could, in at least some cases, be supported by no more than the return of an indictment or the filing of an information." (*Id*. at p. 314.) The court's principal concern involved the conclusory nature of the proffer submitted in support of the license suspension, which simply related counsel's assertion that, based on the charges against them, the defendants could not safely continue their work as contractors. (*Id*. at p. 313.) By itself, a similar representation by counsel would be inadequate in the context of a no-bail determination, as well. However, to the extent *Naidu v. Superior Court*, *supra*, 20 Cal.App.5th 300 may be read to suggest that due process necessarily requires admissible evidence at a bail hearing, it is disapproved.

To summarize, neither the language of article I, section 12(b), nor the mandates of due process, categorically preclude the use of hearsay evidence or reliable offers of proof at a pretrial detention hearing, although the trial court always retains discretion to require additional evidence.

## D. Remand is Required to Determine Whether the Prosecution's Proffered Evidence Satisfied the Elements of Article I, Section 12(b)

Having concluded that a trial court may consider reliable proffered evidence in making factual findings under article I, section 12(b) without offending federal or state due process principles, we turn to the question of whether the prosecution's presentation of evidence satisfied the elements of the constitutional provision in this case. "In reviewing a denial of bail, an appellate court must determine . . . whether the record contains substantial evidence of a qualifying offense — and, if so, whether any reasonable fact finder could have found, by clear and convincing evidence, a substantial likelihood that the defendant's release would result in great bodily harm to one or more members of the public." (*White*, *supra*, 9 Cal.5th at p. 471.) Applying these standards, the Court of Appeal held that the evidence presented below satisfied both elements.[10] (*Harris*, *supra*, 71 Cal.App.5th at p. 1103.)

As noted, in its opposition to defendant's motion to reduce bail and at the bail hearing, the prosecution presented a detailed proffer summarizing the evidence it had collected of petitioner's alleged guilt of the charged offenses and the alleged threat he posed to public safety. The prosecution submitted photographs relating to the charged offenses, but did not provide the court

---

[10] As noted, the Court of Appeal determined remand was nevertheless required because the record did not permit meaningful review of whether sufficient evidence supported a conclusion that "less restrictive alternatives to detention could not reasonably protect the interests in public or victim safety." (*Harris*, *supra*, 71 Cal.App.5th at p. 1106.) No party has challenged this aspect of the Court of Appeal's decision.

with the police reports, written statements, or interview transcripts on which it based its account. The prosecution also took the position that under *Humphrey*, a court must assume that the criminal charges are true. Defense counsel, meanwhile, disputed whether the evidence established that petitioner posed such a risk, noted petitioner had not received complete discovery, called into question the DNA evidence, and emphasized the victim had identified two other people as the perpetrator near the time of the offenses. Yet the defense, too, conceded that *Humphrey* directed the court to assume the truth of the charges. In its ruling denying bail, the trial court cited the prosecution's detailed account of the evidence linking petitioner to the charged offenses as well as the statements from other women regarding petitioner's scarf fetish and angry aggressive behavior.

Based on the record before us, we cannot foreclose the possibility that the trial court erred by presuming the truth of the criminal charges against petitioner when determining whether the "facts are evident or the presumption great" that petitioner committed the charged offenses. (Cal. Const., art. I, § 12, subd. (b).) The court also did not have the benefit of the standards and reliability guidelines we announce today. Under these circumstances, a remand is warranted so that the trial court may apply the standards set forth in article I, section 12(b), as we have clarified them today.

## III.  DISPOSITION

We reverse the judgment of the Court of Appeal insofar as that court held the record contained substantial evidence that the elements of article I, section 12(b) were met.  We remand the matter to the Court of Appeal with directions to remand the case to the trial court for further proceedings consistent with this opinion.  We leave undisturbed the Court of Appeal's determination that the matter must be remanded to the trial court to make additional findings pursuant to *Humphrey, supra,* 11 Cal.5th 135, regarding the feasibility of less restrictive alternatives to detention.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**EVANS, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re Harris

___

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 71 Cal.App.5th 1085
**Review Granted (unpublished)**
**Rehearing Granted**

___

**Opinion No.** S272632
**Date Filed:**  June 27, 2024

___

**Court:**  Superior
**County:**  San Mateo
**Judge:**  Amarra A. Lee

___

**Counsel:**

Marsanne Weese and Rose Mishaan, under appointments by the Supreme Court, for Petitioner John Harris, Jr.

Michael C. McMahon; Salil Dudani, Katherine Hubbard, Carson White; Wilmer Cutler Pickering Hale and Dorr, Daniel S. Volchok and Allison M. Schultz for The California Public Defenders Association, the Ventura County Public Defender, Civil Rights Corps and The ACLU of Northern California as Amici Curiae on behalf of Petitioner John Harris, Jr.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael J. Mongan, State Solicitor General, Jeffrey M. Laurence, Assistant Attorney General, Aimee Feinberg and Joshua A. Klein, Deputy State Solicitors General, Katie L. Stowe, Deputy Attorney General; Stephen M. Wagstaffe, District Attorney, Alpana Samant and Nicole A. Sato, Deputy District Attorneys, for Respondent the People.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Marsanne Weese
Rose Mishaan
Law Offices of Marsanne Weese
255 Kansas Street, Suite 340
San Francisco, CA 94103
(415) 565-9600

Joshua A. Klein
Deputy State Solicitor General
1515 Clay Street, Suite 2000
Oakland, CA 94612
(510) 879-0756